UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEVIN RAGLAND,

               Plaintiff,               Case No. 1:19-cv-523

v.                                       Honorable Janet T. Neff

CORIZON MEDICAL PROVIDERS, INC.
et al.,

               Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Williams and Washington.

## Discussion

        I.        Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan.

The events about which he complains occurred at that facility. Plaintiff sues Corizon Health, Inc.[1] (Corizon), MDOC Director Heidi E. Washington, LMF Medical Provider (unknown) Olette; LMF Nurse Practitioner (unknown) Williams, and Unknown Party #1 (an unknown Assistant Chief Medical Officer (ACMO)).[2]

Plaintiff alleges that neurologist Harish Rawal, M.D., performed fusion surgery on the L4-L5 section of Plaintiff's spine on June 20, 2017. At a follow-up consultation on July 31, 2017, Dr. Rawal completed a written referral for Plaintiff to return in six months for another post-surgical evaluation. According to Plaintiff, it took the filing of a grievance and telephone calls from his family to get the follow-up appointment scheduled, which did not take place until nearly a year later.

Plaintiff alleges that, during this time, he kept complaining about his back. At some point, an x-ray was performed. After Plaintiff filed a complaint, he was scheduled for an MRI. He was seen by the neurologist in 2018 at Ford Hospital. The neurologist explained that the only thing that could be done for his ongoing problems was pain management.

When Plaintiff returned to the prison, Corizon provider Tammy Kelly (not a Defendant) saw Plaintiff and prescribed a five-day course of Ultram, which Plaintiff alleges relieved his pain to some degree. After five days, a Corizon provider (presumably Tammy Kelly)

---

[1] Plaintiff names Defendant as "Corizon Medical Providers, Inc." However, the proper corporate name for the medical provider who contracts with the state of Michigan is "Corizon Health, Inc." *See* Contract Between State of Michigan and Corizon Health, Inc. for 2016 to 2021 (Change Notice #3), https://www.google.com/url?sa=t&rct= j&q=&esrc=s&source=web&cd=5&ved=2ahUKEwj_i5_699zjAhVCo1kKHRG_CJUQFjAEegQIBBAC&url=https %3A%2F%2Fwww.michigan.gov%2Fdocuments%2Fmicontractconnect%2F6600081_526101_7.pdf&usg=AOvVa w1bHBf9k3UnNYHgfE5HJUS3 (visited July 30, 2019). The Court will use the correct corporate name within this opinion.

[2] Plaintiff initially filed his action in the Eastern District of Michigan. In his complaint, Plaintiff also named two other Defendants, a nurse at the Saginaw Correctional Facility (Defendant Lamb) and a medical provider at the Jackson Correctional Facility (Defendant Jamsen). The Eastern District of Michigan dismissed Defendants Lamb and Jamsen in an order issued on June 28, 2019 (ECF No. 5), before transferring the action to this Court.

informed Plaintiff that she would like to try a combination of the medications Elavil and Cymbalta. Plaintiff agreed. When Plaintiff began taking the medications, however, he became depressed and began drooling. Plaintiff returned to Tammy Kelly, who gave him another five-day prescription for Ultram, together with a prescription for steroids. The steroids provided no pain relief.

Plaintiff has received a series of epidural steroid shots, which only gave him minor pain relief for about a week at a time. Medical provider Tammy Kelly twice completed form recommendations that Plaintiff's five-day Ultram prescription be extended. However, the pain-management committee denied the requests and instructed Plaintiff to use over-the-counter pain medications, which Plaintiff claims are ineffective.

On May 28, 2019, Plaintiff was again seen by a neurologist at Henry Ford Allegiance Hospital in Jackson, Michigan. Plaintiff received another series of epidural steroid shots. In his conversation with the neurologist, the doctor informed Plaintiff that he was permitted to prescribe Neurontin to Plaintiff, given that other medications had failed to relieve Plaintiff's pain.

Plaintiff was scheduled to be seen by a prison medical provider on June 5, 2019. Plaintiff believed that he would see Sandra Groff (not a Defendant). However, when he arrived at his appointment, he discovered that he would be seen by Defendant Olette, whom Plaintiff calls "Dr. Death." (Compl., ECF No. 1, PageID.7.) Defendant Olette informed Plaintiff that the pain-management committee would not authorize the pain medication Plaintiff wanted. But she would ask for Elavil. When Plaintiff responded that he could not take Elavil, Defendant Olette allegedly became irate. Plaintiff next attempted to talk to Olette about a heart issue he had begun experiencing in March 2019, which had been diagnosed as angina and for which he had been prescribed nitroglycerin tablets. Plaintiff complained to Defendant Olette that the pills were too

strong, and he requested something less potent. He also requested that Defendant Olette refer him for a heart stress test.

Defendant Olette responded that she did not have the time during the appointment to discuss the heart issue. Plaintiff told Olette that he did not want to be misdiagnosed by Olette like several prisoners who had subsequently died. Olette ordered Plaintiff out of her office. Plaintiff argues that he was dismissed from the medical appointment simply because he inquired about his heart issue. Plaintiff contends that Defendant Olette misdiagnosed a number of prisoners in the past, including prisoner Holloway, who recently passed away after Olette misdiagnosed Holloway's heart condition.

Plaintiff next complains that he has been diagnosed with hepatitis C. He alleges that he has filed several grievances and spoken with several Corizon medical providers, but he has allegedly been denied participation in the protocol for treatment of hepatitis. Plaintiff contends that he is at the first stage of the disease, but the protocol applies only to those who have reached the second stage. He therefore contends that he is being denied equal protection with other similarly situated prisoners.

With respect to both his back pain and his hepatitis, Plaintiff alleges that Defendants have been deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. Plaintiff alleges a pattern and policy by Defendants to deny adequate medical attention.

For relief, Plaintiff seeks both compensatory and punitive damages, together with an injunction requiring Corizon, its providers, and the MDOC pain management committee to provide him the medication necessary to control his pain and to provide treatment for his hepatitis C before he reaches the second stage of the disease.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Lack of Allegations

Plaintiff makes no factual allegations against Defendants Williams or Washington. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendants Williams and Washington in the body of his complaint. His allegations fall far short of the minimal pleading

standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff intends to suggest that Defendants Williams and Washington are responsible because they failed to supervise Defendant Olette or improperly denied Plaintiff's grievances, he also fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Williams and Washington engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### B. Remaining Claims

On initial review, the Court concludes that Plaintiff's allegations against Defendants Olette and Corizon are sufficient to permit Plaintiff's Eighth Amendment claim about the failure to treat his back pain to proceed against them. In addition, Plaintiff's allegations about

7

Defendants Unknown Party #1 and Corizon are sufficient to state Eighth Amendment and equal protection claims relating to the denial of care for his hepatitis C.

**<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Williams and Washington will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's claims against Defendants Olette, Corizon Health, Inc., and Unknown Party #1 remain in the case.

An order consistent with this opinion will be entered.


Dated: August 6, 2019 /s/ Janet T. Neff
Janet T. Neff
United States District Judge