UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN RAGLAND #191565,

        Plaintiff,                                    Hon. Janet T. Neff

v.                                                    Case No. 1:19-cv-523

CORIZON MEDICAL PROVIDERS, INC.,
et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Corizon Health, Inc. and Margaret Ouellette, P.A.'s Motion for Summary Judgment Based Solely on the Failure to Exhaust Administrative Remedies.  (ECF No. 26).  Defendant Rickey Coleman, D.O., has filed a Notice of Joinder and Concurrence in the Motion for Summary Judgment.  (ECF No. 46.)  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), sued Corizon Health, Inc.[1] (Corizon), Corizon employees Margaret Ouellette, P.A. and Rickey Coleman, D.O., and certain MDOC employees pursuant to 42 U.S.C. § 1983 alleging claims based on the lack of, or insufficient, medical care while Plaintiff was housed at the Lakeland Correctional

---

[1] Although Plaintiff sued Corizon Medical Providers, Inc., the Court has previously noted that Corizon Health, Inc. is the proper corporate name for the provider that contracts with the State of Michigan.  (ECF No. 9 at PageID.60 n.1.)  Accordingly, the Court will use the correct corporate name herein.

1

Facility. Following initial review pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c), in which all of the MDOC employees were dismissed, Plaintiff's remaining claims are: (1) an Eighth Amendment claim against Ouellette and Corizon for failure to treat Plaintiff's back pain; and (2) Eighth Amendment and equal protection claims against Coleman and Corizon concerning the denial of care for Plaintiff's hepatitis C. (ECF No. 9 at PageID.65–66.) With regard to Plaintiff's hepatitis C, Plaintiff alleges that despite filing several grievances, he has been denied participation in the protocol for treatment of hepatitis. Plaintiff alleges that he is at the first stage of the disease, but the protocol applies only to those who have reached the second stage. He claims that he is being denied equal protection as compared to other similarly-situated prisoners.

Defendants now move for summary judgment on the ground that Plaintiff failed to exhaust his remaining claims. Plaintiff has filed a response and a declaration. (ECF Nos. 49 and 50.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim

to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V. The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants attach a Step III Grievance Report showing grievances that Plaintiff exhausted through Step III during the relevant time period.[2] Defendants

---

[2] Plaintiff objects to Defendants' exhibits on the ground that Defendants failed to authenticate them with a declaration or an affidavit as required by Fed. R. Civ. P. 56(c). Plaintiff further objects that Defendants failed to submit an undisputed statement of facts. (ECF No. 51 at

4

cite the following four grievances from the Step III report as potentially relating to the claims Plaintiff asserts in this case.

I.      **Grievance LCF-2017-12-1038-28e (1038 Grievance)**

Defendants state that the 1038 Grievance named non-defendant Tamara Kelley, N.P., and Corizon and complained about denial of adequate treatment for back pain.[3]  The 1038 Grievance was denied at Step I.  The Step II response states that the grievance was "[r]esolved" (ECF No. 26-1 at PageID.160), but Plaintiff disputes this characterization because the response did not

---

PageID.321.)  Plaintiff's arguments lack merit.  First, with regard to an undisputed statement of facts, Plaintiff cites no court rule or case requiring a moving party to submit an undisputed statement of facts.  While some courts do require a moving party to submit an undisputed statement of facts pursuant to a local rule, this district has no such rule.  With regard to Plaintiff's authentication argument, Plaintiff is correct that the Step III Grievance Report that Defendants submitted does not contain a Step III affidavit from an MDOC Department Analyst that usually accompanies such reports submitted in support of a motion for summary judgment based on failure to exhaust.  However, the absence of an affidavit is not fatal to Defendants' motion.  Many courts have recognized that the 2010 amendment to Rule 56 altered the rules for authentication at the summary judgment stage.  As explained in *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-CV-1144, 2011 WL 5169384 (W.D. Mich. Oct. 31, 2011), "the amendment replaces a clear, bright-line rule ('all documents must be authenticated') with a multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method to doing so at trial." *Id.* at *2 (footnote omitted).  Thus, "the objection contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be." *Id.*; *see also Obnamia v. Shinseki*, No. 2:12-cv-58, 2013 WL 5408267, at *2 n.1 (S.D. Ohio Sept. 25, 3013) (noting that "[t]he amended Rule . . . allows a party making or opposing a summary judgment motion to cite to materials in the record, whether authenticated or not").  In *Ganesh v. United States*, 658 F. App'x 217, 220 (6th Cir. 2016), the Sixth Circuit affirmed that the proper objection to authenticity under the 2010 amendment to Rule 56 is that the document could not be presented in admissible form.  Plaintiff's objection that Defendants failed to authenticate the Step III Grievance Report is insufficient, as Plaintiff does not contend that the report could not be presented in admissible form.  In fact, the deficiency Plaintiff notes could be easily cured with an affidavit from an MDOC records custodian.

[3] Based on its review of the 1038 Grievance, the Court notes that it was actually directed at non-defendant NP Tammy Kelley and not Corizon.  (ECF No. 26-1 at PageID.161.)  While Plaintiff did mention Corizon, he did so only because Kelley was a "Corizon medical provider" who was "willfully neglecting a patient."  (*Id.*)  In any event, for purposes of this motion, the Court accepts Corizon's characterization of the grievance.

address Plaintiff's claim that he still had not been scheduled for his follow-up appointment with his neurologist. (ECF No. 50 at PageID.295.) The grievance was rejected at Step III as untimely. A Step III rejection for untimeliness precludes a finding of proper exhaustion. *See Lewis v. Spitters*, No. 1:14-cv-917, 2015 WL 5682405, at *2, 5 (W.D. Mich. Sept. 18, 2015).

In his declaration, Plaintiff states that his outgoing expedited legal mail form for February 2018—that the MDOC said it would provide in response to Plaintiff's subpoena but failed to do so even after Plaintiff paid the MDOC for a copy of the document—would have shown that Plaintiff did not miss the filing deadline for his Step III appeal. (ECF No. 49 at PageID.286; ECF No. 50 at PageID.296.) The Step II appeal form shows that the Step II response was returned to Plaintiff on January 19, 2018. Plaintiff was required to file his Step III appeal "within ten business days after receiving the Step II response." MDOC Policy Directive 03.02.130 ¶ FF. Plaintiff was thus required to file his Step III appeal no later than February 2, 2018. Plaintiff's appeal would be "considered filed on the date [he] sent it." MDOC Policy Directive 03.02.130 ¶ S. Based on Plaintiff's statement in his declaration that his February 2018 expedited legal mail form would have shown that Plaintiff's Step III appeal was timely filed, the undersigned concludes that an issue of fact remains as to whether Plaintiff properly exhausted the 1038 Grievance.

**II.    Grievance LCF-18-06-0549-28C (0549 Grievance)**

Plaintiff directed the 0549 Grievance at Corizon for "a custom and practice of ignoring [his] serious medical needs" regarding his back condition by not scheduling Plaintiff's six-week follow-up visit with his neurologist. (EFC No. 26-1 at PageID.156.) This grievance was rejected at Step I for containing multiple issues. (ECF No. 26-1 at PageID.157.) The rejection was upheld at Steps II and III. Plaintiff contends that his grievance was improperly rejected because it dealt with a single issue: Corizon's failure to schedule his six-week follow-up appointment.

6

The MDOC grievance policy provides that a grievance may be rejected if, among other things, it "contains multiple unrelated issues." MDOC Policy Directive 03.02.130 ¶ G.1. Plaintiff cites *LaFountain v. Martin*, 334 F. App'x 738 (6th Cir. 2009) (per curiam), as support for his contention that the MDOC improperly rejected his grievance. In *LaFountain*, the plaintiff filed a grievance alleging that an MDOC employee retaliated against him for filing grievances by telling other prisoners that the plaintiff was a snitch and a sexual predator. *Id.* at 740. The plaintiff also claimed that as a result of the warden's and assistant warden's lack of supervision over the employee, the plaintiff's cell was robbed. The grievance was rejected because it raised multiple issues. *Id.* The Sixth Circuit concluded that the grievance did not raise multiple unrelated issues:

> It raises one claim, namely, that Martin retaliated against LaFountain for having filed grievances by labeling him a snitch and a sexual predator in order to motivate other prisoners to take action against him. The hostile action that LaFountain claims to have suffered as a result of being labeled a snitch and a sexual predator, such as being accosted in the bathroom and having his cell robbed, is merely the harm he suffered as a result of the alleged retaliation.

*Id.* at 741.

Here, as in *LaFountain*, Plaintiff's grievance did not raise multiple unrelated issues. The sole issue Plaintiff raised was Corizon's failure to send him back to the neurologist for his six-week follow-up appointment. Plaintiff stated that "because of this unjustified delay grievant is in constant pain that could very well have been avoided." (ECF No. 26-1 at PageID.156.) Plaintiff's request for pain medication for his back and training for Corizon employees was not an unrelated issue, but merely the remedy for the harm Plaintiff alleged he suffered because of the delay in scheduling his follow-up appointment. Accordingly, the undersigned concludes that Plaintiff properly exhausted the 0549 Grievance with regard to his claim against Corizon.

**III.    Grievance LCF-2018-05-0524-28e (0524 Grievance)**

This grievance was directed at non-defendant Medical Provider Kelly regarding denial of pain medication and alleged "cheeking"[4] by Plaintiff.  This grievance was denied at Steps I and II and rejected at Step III as untimely.  This grievance did not exhaust a claim against any defendant in this case, and Plaintiff does not argue otherwise.

**IV.    Grievance LCF-2019-05-0502-28b (0502 Grievance)**

The 0502 Grievance was directed at Defendant Ouellette.  Plaintiff began the grievance by stating that he was supposed to see provider S. Groff for his appointment but was seen by Ouellette instead.  Plaintiff told Ouellette that that he needed a stress test for his heart because his father had passed away from a heart attack.  Plaintiff stated that Ouellette "barked" that they were not going to give him a stress test and "was hostile, dismissive, & deliberately indifferent to [Plaintiff]."  Plaintiff then informed Ouellette that he did not want to be misdiagnosed like another prisoner who had died because Ouellette had misdiagnosed his condition.  When Plaintiff turned the discussion to the neurologist's recommendation that Plaintiff be given Neurontin, Ouellette informed Plaintiff that he could not receive Neurontin and told him to leave because she had to see other patients.  Plaintiff concluded:  "I am afraid that Olette [sic] is going to KILL ME.  Please give me Provider Groff back."  (ECF No. 26-1 at PageID.146.)   The 0502 Grievance was rejected as vague at Step I because it lacked specific details regarding an alleged violation of policy/procedure.  (ECF No. 26-1 at PageID.147.)   The rejection was upheld at Steps II and III.

In his response, Plaintiff states that this grievance asserted that Ouellette was deliberately indifferent "for prescribing a heart medication . . . without any stress or other tests to accurately

---

[4] The undersigned understands that "cheeking" occurs when a prisoner does not swallow medication but instead hides it in his cheek for an improper purpose, such as selling the medication to another inmate.

8

diagnose my heart condition." (ECF No. 50 at PageID.299.) Plaintiff does not argue that the 0502 Grievance had anything to do with his claim in this case that Ouellette failed to treat his back pain. Plaintiff does not have a claim in this case against Ouellette for failing to treat his heart condition. (ECF No. 9 at PageID.65–66.) Moreover, Plaintiff offers no basis for the Court to conclude that the MDOC's rejection of the grievance as vague was improper.

In sum, the undersigned concludes that a question of fact remains as to whether Plaintiff properly exhausted the 1038 Grievance against Corizon for denial of adequate treatment of back pain. The undersigned further concludes that Plaintiff properly exhausted the 0549 Grievance against Corizon for failing to timely schedule his six-week follow-up appointment with his treating neurologist following his back surgery. The undersigned concludes that Plaintiff failed to properly exhaust a grievance against Defendant Ouellette for his claim at issue in this case that she failed to treat his back pain. Finally, Plaintiff failed to properly exhaust a grievance as to Corizon and Defendant Coleman for his hepatitis C-based claims. Although Plaintiff objects to Defendant Coleman's joinder in the instant motion, Plaintiff is not prejudiced by the joinder. Defendant Coleman would have relied on the same evidence as Corizon to prove lack of exhaustion, which, as noted above, shows that Plaintiff failed to exhaust any grievance through Step III pertaining to denial of treatment for hepatitis C.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that Defendants' Motion for Partial Summary Judgment based Solely on the Failure to Exhaust (ECF No. 26) be **granted** with regard to the hepatitis C-based claims against Defendants Corizon and Coleman. It is recommended that the back-pain claim against Defendant Ouellette be **dismissed without**

**prejudice**. I further recommend that Defendants' motion be **denied** as to the back-pain claim against Corizon.

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: March 3, 2020                               /s/ Sally J. Berens
                                                   SALLY J. BERENS
                                                   U.S. Magistrate Judge