UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN RAGLAND #191565,

       Plaintiff,                              Hon. Janet T. Neff

v.                                                        Case No. 1:19-cv-523

CORIZON MEDICAL PROVIDERS, INC.,
et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is presently before me on Defendant Corizon Health, Inc.'s Motion for Summary Judgment (ECF No. 101), and Plaintiff's Motion for Summary Judgment. (ECF No. 103.) The motions are fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Corizon's motion be **GRANTED**, that Plaintiff's motion be **DENIED**, and that Plaintiff's claim against Corizon be **dismissed with prejudice**.

**I.    Background**

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), sued Corizon and several medical providers pursuant to 42 U.S.C. § 1983, alleging claims based on the lack of, or insufficient, medical care while Plaintiff was housed at the Lakeland Correctional Facility (LCF). Plaintiff's remaining claim is that Corizon denied him adequate treatment for his back pain, including not timely scheduling Plaintiff's six-week follow-up visit with his neurologist and failing to provide him a pain reliever that his physician recommended.

On June 22, 2017, Dr. Harish Rawal, M.D., performed an elective L4-L5 lumbar decompression and lumbar fusion on Plaintiff at Henry Ford Allegiance Health. Plaintiff's

1

discharge instructions included a follow-up with Dr. Rawal in six weeks and a follow-up with a nurse practitioner in two weeks for a wound check. (ECF No. 101-2 at PageID.589–90.) Plaintiff was discharged from Henry Ford and admitted to Duane Waters Hospital (DWH) on June 25, 2017, where he was prescribed Tylenol, Flomax, Dulcolax, Hydrocodone-acetaminophen, Albuterol Sulfate, Excedrin Migraine, Latanoprost, and Protonix. On admission to DWH, it was noted that Plaintiff was scheduled for a six-week follow-up with Dr. Rawal and was to wear his back brace at all times while out of bed. (*Id.* at PageID.592, 596.) On June 26, 2017, Dr. Larson met with Plaintiff and ordered medications and assistive devices to help with Plaintiff's recovery. Dr. Larson also submitted a request for a six-week follow-up appointment with Dr. Rawal, which was approved by Corizon's utilization manager on June 27, 2017. (*Id.* at PageID.599–603.)

On June 27, 2017, P.A. Alford saw Plaintiff for a provider visit. Plaintiff was taking morphine every four hours but requested "what I was on before" because it was not enough pain medication. Plaintiff had been given an increased dosage of morphine on June 26 and was informed that he was able to take Tylenol and to utilize ice packs. (*Id.* at PageID.605–06.)

On June 28, 2017, Plaintiff advised P.A. Alford that he believed his surgery "went wrong" since he was having pain. P.A. Alford advised Plaintiff that post-surgical pain, swelling, and mobility limitation was part of the healing process and there was no indication of complications following the surgery. P.A. Alford agreed to prescribe a small dose of Neurontin for pain. (*Id.* at PageID.609.) On June 30, 2017, Dr. Larson requested an outside consultation for physical therapy for Plaintiff. The request was approved for an evaluation while Plaintiff was a patient at DWH or C unit. (*Id.* at PageID.613–14.) Plaintiff was seen for his physical therapy evaluation on July 5, 2017. He presented with decreased lumbar range of motion but was noted to be "doing better overall." His rehab potential was "good." (*Id.* at PageID.615–16.)

On July 11, 2017, P.A. Alford spoke to Plaintiff about factors keeping him at DWH, which included follow-up with Dr. Rawal, tapering from pain medication, and clearance from physical therapy. (*Id.* at PageID.618.) P.A. Alford saw Plaintiff again on July 27, 2017. She ordered Neurontin 100 mg and noted that Plaintiff had taken himself off narcotics and was functioning well on low-dose Neurontin. She also indicated that Plaintiff would likely be able to return to general population shortly. (*Id.* at Page ID.619.)

Plaintiff returned to see Dr. Rawal for his post-op visit on July 31, 2017. Plaintiff reported that he was doing great and that his pain was gone. (*Id.* at PageID.621.) His physical exam showed stable hardware and progress of fusion. Dr. Rawal noted that Plaintiff no longer needed to wear the brace. (*Id.*) At discharge from DWH on August 1, 2017, P.A. Alford noted that Dr. Rawal had recommended a follow-up in six weeks with one of his partners, although it was unclear whether the appointment would be necessary. The decision was deferred to the provider at Plaintiff's new facility, St. Louis Correctional Facility (SLF). Neurontin was ordered for 30 days. (*Id.* at PageID.627–28.)

On August 2, 2017, Plaintiff was seen at SLF for complaints of persistent 8/10 pain. P.A. Buskirk added Tylenol for improved pain control. (*Id.* at PageID.629–31.) On August 15, 2017, Plaintiff was transferred to LCF. He requested an increased dose of Neurontin and a bottom bunk detail. (*Id.* at PageID.632.) On August 26, 2017, Dr. Davis requested a Pain Management Committee (PMC) consultation to increase the Neurontin for a period of time and ordered an x-ray exam of Plaintiff's lower spine due to worsening of his pain since surgery. The PMC recommended Duloxetine/Cymbalta 30 mg. and discontinuation of the Neurontin. (*Id.* at PageID.634–36.) The x-ray findings were negative for acute disease in the lumbar spine. (*Id.* at PageID.637.)

On September 7, 2017, Dr. Yarid saw Plaintiff for complaints of continuing mid-lower and right back pain. Plaintiff requested an increase in his pain medication. Dr. Yarid requested PMC approval for an increase in Cymbalta, a course of Ultram for five days, and a back brace. The PMC recommended Tylenol up to two grams/day, formulary NSAID of choice up to the maximum dose, self-massage, heat, range of motion and stretching exercises, and walking. The PMC also recommended consideration of a neurosurgery follow-up if the condition worsened. The request for Ultram was deferred because three months had passed since Plaintiff's surgery and narcotics were no longer indicated. (*Id.* at PageID.638–43.)

Plaintiff saw Dr. Yarid again on September 28, 2017, reporting that he could not walk more than ten minutes and had pain throughout the lumbar and thigh areas. Dr. Yarid submitted a request for a neurology consultation due to Plaintiff's worsening symptoms. Dr. Yarid's request was deferred, and an alternate treatment plan was provided because the need for a return to neurosurgery was not demonstrated. It was noted that a neurologic and musculoskeletal exam was needed to determine whether the presentation was a return to prior pain or a new pathology and if new findings indicated a need for urgent intervention. It was also noted that a conservative plan of treatment may be indicated depending on the results. (*Id.* at PageID.644–47.)

On October 25, 2017, N.P. Kelly submitted a request for an MRI of the lumbar spine. The request was deferred, and an alternative treatment plan was provided because the need for an MRI was not demonstrated. It was noted that the patient still needed a neurologic and musculoskeletal exam. It was recommended that an x-ray be considered. (*Id.* at PageID.648–52.) An x-ray study on November 15, 2017, showed no acute osseous changes to the lumbar spine. (*Id.* at PageID.654.)

On December 13, 2017, N.P. Kelley submitted another request for an MRI of the lumbar spine. The request was deferred, and a recommendation made for a follow-up with neurosurgery

4

and an assessment of patient activity. (*Id.* at PageID.656–57.) On December 17, 2017, utilization management approved N.P. Kelley's request for a neurosurgery consultation, and the PMC approved a request for Neurontin due to ineffective pain management. (*Id.* at PageID.658–62.)

On January 17, 2018, Plaintiff was approved for an MRI of the lumbar spine. The February 15, 2018 MRI revealed mild canal stenosis and moderate bilateral foraminal encroachment, post-surgical changes, minimal right eccentric disc bulge at L5-S1 without central canal stenosis or nerve root impingement. A request for a follow-up with neurosurgery was made and approved on March 29, 2018. (*Id.* at PageID.664–67.)

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the

5

record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

As noted, Plaintiff moves for summary judgment against Corizon on his claim that its failure to return him for his six-week post-op neurology appointment that Dr. Rawal had recommended on July 31, 2017, violated his Eighth Amendment right to adequate medical care. Plaintiff states that he repeatedly put Corizon on notice that he had not been returned for his consultation with the neurologist, per Dr. Rawal's recommendation, but Corizon failed to approve or schedule the appointment. In addition, Plaintiff contends that evidence shows that Corizon interfered with his doctor's orders for Ultram without a clear medical reason. (ECF No. 103 at PageID.672–74.) Plaintiff contends that Corizon's refusal to follow his provider's recommendation—and the resulting delay in medical treatment—constitutes deliberate indifference under the Eighth Amendment.

Corizon also moves for summary judgment, arguing that to establish his claim, Plaintiff must prove, as set forth in *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978), that his injury was caused by a Corizon policy or custom. Corizon contends that Plaintiff's reliance on the deliberate indifference standard alone does not suffice to establish his claim because his failure to identify a Corizon policy or custom and connect it to his alleged injury is fatal to the claim.

A private provider of health care services to prisoners, such as Corizon, cannot be held liable under Section 1983 on a theory of respondeat superior or vicarious liability. *Perry v. Corizon*

6

*Health, Inc.*, No. 17-2489, 2018 WL 3006334, at *1 (6th Cir. June 8, 2018) (citing *Rouster v. County of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014)); *see also Maldonadodeher v. Corizon Med. Servs., Inc.*, No. 2:16-CV-21, 2016 WL 6208705, at *2 (W.D. Mich. Aug. 11, 2016), *report and recommendation adopted*, 2016 WL 6161558 (W.D. Mich. Oct. 24, 2016) ("A plaintiff that sues a private or public corporation for constitutional violations under § 1983 must establish that a policy or custom caused the alleged injury. The Sixth Circuit has specifically held that like a municipal corporation, a private corporation's 'liability must also be premised on some policy that caused a deprivation of [a prisoner's] Eighth Amendment rights.' Plaintiff's complaint fails to set forth any policy on the behalf of Corizon that caused the alleged deprivation of his rights. . . . Corizon is entitled to dismissal from this action.") (internal citations omitted). To state a claim for relief against a private contractor, a plaintiff must allege that his injuries resulted from the contractor's unconstitutional policy or custom. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Therefore, to satisfy *Monell*'s requirements, a plaintiff must identify the policy or custom, connect it to the contractor, and show that the policy caused the injury or deprivation. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

Here, Plaintiff makes no argument, nor offers evidence, that a Corizon policy or custom caused the alleged constitutional deprivation. Plaintiff fails to show that Corizon "was aware of prior unconstitutional actions by its employees and failed to take corrective measures." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 815-16 (6th Cir. 2005). Moreover, that Plaintiff claims his rights were violated in this particular instance is insufficient to meet his burden of establishing a policy, practice, or custom. A plaintiff may not rely upon an isolated instance to establish a policy or

custom. Instead, he must show a pattern or repeated evidence of such conduct. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005).

The issue here is not whether state prisoners may sue private correctional medical providers under Section 1983. The Supreme Court has held that they may. *West v. Atkins*, 487 U.S. 42, 54 (1988). The issue is what proof is required to establish such a claim. Plaintiff's citation to *West* misses the mark. The cases Plaintiff cites for the proposition that he need not show the existence of a policy or custom, *Segler v. Clark County*, 142 F. Supp. 2d 1264 (D. Nev. 2001), and *Campbell v. City of Philadelphia*, No. 88-6976, 1990 WL 102945 (E.D. Pa. July 18, 1990), *abrogation recognized by Estate of Adam Earp v. City of Philadelphia*, No. CIV. A. 96-7141, 1997 WL 255506 (E.D. Pa May 7, 1997), are not binding on this Court because they are from courts outside the Sixth Circuit and are district court decisions. *See Zafar v. Abbott Labs., Inc.*, No. 1:15-CV-361, 2016 WL 3027196, at *5 n.3 (W.D. Mich. May 27, 2016) ("The sole case Abbott cites, *Mills v. Philadelphia Gas Works*, No. 06-2444, 2007 WL 2071881 (E.D. Pa. July 19, 2007), is an out-of-circuit district court decision not binding on this Court."). Moreover, *Campbell*—in which a foster child was killed by her foster mother—is factually distinct. Finally, *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917 (7th Cir. 2004), does not support Plaintiff's cause, as the *Woodward* court said, with regard to the corporate medical provider defendant in that case, "we have stated that a corporate entity violates an inmate's constitutional rights 'if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners.'" *Id.* at 926 (quoting *Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003)) (footnote omitted).

In sum Plaintiff fails to establish the essential requirement that a Corizon policy or custom caused his injury. Therefore, Corizon is entitled to summary judgment.

### IV. Conclusion

For the foregoing reasons, I recommend that the Court **grant** Corizon's motion for summary judgment (ECF No. 101), **deny** Plaintiff's motion for summary judgment (ECF No. 103), and **dismiss** this action **with prejudice**.

Dated: September 30, 2021            /s/ Sally J. Berens
                                                         SALLY J. BERENS
                                                         U.S. Magistrate Judge

**NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).